UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARNOLD EDWARD DEMANN,    Case Nos.    1:26-CV-129; 1:26-CV-131;
1:26-CV-133; 1:26-CV-134;
Plaintiff,    1:26-CV-135; 1:26-CV-136;
1:26-CV-137; 1:26-CV-138;
1:26-CV-139

UNKNOWN PARTIES, et al.,    HON. ROBERT J. JONKER

Defendants.
_____/

## ORDER APPROVING AND ADOPTING
## REPORTS AND RECOMMENDATIONS

### INTRODUCTION

On January 13, 2026, Plaintiff Arnold DeMann filed nine civil cases in this district.    On March 30, 2026, the Magistrate Judge issued a single Report and Recommendation that recommended the Court dismiss each case under the screening mechanism set out at 28 U.S.C. § 1915(e)(2)(B).    On April 30, 2026, Mr. DeMann filed an identical forty-two-page Objection in each case.    The matter is now before the Court on the Magistrate Judge's Report and Recommendation.    The Court issues this single order for filing in all nine cases.    For the reasons set out in full, the Court agrees with the Magistrate Judge's recommended disposition and dismisses Mr. DeMann's cases under Section 1915.

### LEGAL STANDARDS

The Court has reviewed Magistrate Judge Vermaat's Report and Recommendation and Plaintiff's Objection to the Report and Recommendation.    Under the Federal Rules of Civil Procedure, where, as here, a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de

novo reconsideration, he or she finds it justified." 12 WRIGHT, MILLER, & MARCUS, FEDERAL

PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997).    Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.    The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FED R. CIV. P. 72(b)(3).    De novo review in these circumstances requires at least a review of the

evidence before the Magistrate Judge.    *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981).

## DISCUSSION

The Court has reviewed de novo the claims and evidence presented to the Magistrate Judge;

the Report and Recommendation itself; and Mr. DeMann's objections.    After its review, the Court

finds the Magistrate Judge's Report and Recommendation to be factually sound and legally

correct.

### *FACTUAL BACKGROUND*

In his earliest numbered Complaint, Mr. DeMann remarked "I don't know what to do

anymore.    I am going INSANE trying to figure it out." Case No. 1:26-cv-129, ECF No. 1,

PageID.2 (W.D. Mich. Jan. 13, 2026).    It appears what Mr. DeMann decided to do was to file

quite literally hundreds of pages across the nine lawsuits and ask the Court to cobble things

together for him.    This, the Court does not and cannot do.    Nevertheless, the Court has done its

best to discern the overall contentions within the pleadings.

Mr. DeMann has had moderate to severe hearing loss for most of his life. By his own

admission, he refuses to wear hearing aids.    Some years ago, indeed, two decades ago, Mr.

DeMann was a defendant in a State Court criminal proceeding.    As set out in a Michigan Court

of Appeals decision, Mr. DeMann maintained a methamphetamine lab in a barn located on his

2

parents' property.    An anonymous informant told police about Mr. DeMann's activities, and three police officers visited him at his separate residence.    During the conversation, Mr. DeMann admitted to "cooking" methamphetamine.    *People v. Demann*, No. 268657, 2007 WL 2404534, at *1 (Mich. Ct. App. Aug. 23, 2007).    Mr. DeMann went to trial on charges stemming from his methamphetamine manufacturing operations.

It appears that Mr. DeMann raised his hearing difficulties during trial.    He seemingly was offered hearing aids, but he maintains those hearing aids were "junk" and were an insufficient accommodation. [1]   It is not precisely clear what Mr. DeMann believes would have been sufficient—there is some suggestion that Mr. DeMann believes he needed some sort of interpreter or that everything (including testimony) needed to be given to him in writing—but the materials attached to Mr. DeMann's pleadings suggest that whatever hearing difficulties Mr. DeMann may have had during trial, they did not prevent him from participating in his defense. In particular, on February 4, 2011, a staff attorney with a disability rights law firm wrote that he had reviewed Mr. DeMann's trial proceedings, and noted that "[w]hen you testified, you were asked by your own attorney three times if you heard the testimony of other witnesses during the trial.    Each time, without any equivocation, you answered yes."    Case No. 1:26-cv-139, ECF No. 1-1, PageID.23.

A jury subsequently convicted Mr. DeMann on the charges, and he was sentenced as a repeat controlled-substance offender to 42 to 240 months imprisonment. *People v. Demann*, 2007 WL 2404534, at *1.    Mr. DeMann appealed his convictions and sentence.    Among other things, he argued that he was covered by the Deaf Persons' Interpreters Act (DPIA), MCL 393.501.    And because, he said, he was not afforded the accommodations he was due under the statute during his

---

[1] To be clear, Mr. DeMann does not allege there was a specific deficiency with respect to the particular hearing aids he was offered.   Rather it appears that Mr. DeMann maintains that, in general, he chooses not to use them.

initial conversation with police, his inculpatory statements needed to be suppressed and the trial

court also needed to provide certain procedural protections that were not given to him during trial.

There were other errors too, he claimed, including the admission of the out-court-court statement

of the anonymous informant.

On August 23, 2007, the Michigan Court of Appeals affirmed Mr. DeMann's convictions

and sentence.    In its decision, the Michigan Court of Appeals thoroughly discussed Mr.

DeMann's contentions regarding his hearing and rejected each one, including his contention that

he was covered by the DPIA.    In relevant part, the Michigan Court of Appeals remarked:

> The trial court did not err in concluding that defendant is not a "deaf
> person" as defined by the DPIA, MCL 393.502(b), and we are
> satisfied that the trial court conducted an adequate evidentiary
> hearing with regard to defendant's purported hearing impairment in
> this matter.    According to the evidence introduced below,
> defendant's hearing loss is approximately "50 percent" or
> "moderate." Moreover, there was substantial evidence that
> defendant was at least partially able to hear and understand spoken
> language, and that defendant did not primarily rely on other means
> of sensory input in communicating with others.
>
> Quite simply, the record in this case does not show that defendant's
> hearing is "totally impaired." Nor does the record support the
> proposition that defendant's "primary means of receiving spoken
> language is through other sensory input," such as sign language or
> lip-reading. Because defendant does not qualify as a "deaf person"
> under MCL 393.502(b), he is not covered by the DPIA.
> Accordingly, MCL 393.505 is inapplicable in this case and did not
> bar defendant's admissions to the police. The trial court's decision
> regarding defendant's hearing impairment was not clearly
> erroneous."

*People v. Demann*, 2007 WL 2404534, at *2.    The Michigan Court of Appeals also rejected Mr.

DeMann's contentions regarding the out-of-court witness testimony.    Mr. DeMann

unsuccessfully sought review from the Michigan Supreme Court, and his state court collateral

relief challenges were also denied.

On April 26, 2011, Mr. DeMann filed a federal habeas petition in this Court. *DeMann v. Harvatich*, No. 1:11-cv-438 (W.D. Mich. Apr. 29, 2011). DeMann raised his hearing impairment at several points in his petition as requiring habeas relief. The case did not proceed to the merits. Instead, a Magistrate Judge recommended dismissing the petition because Mr. DeMann was no longer imprisoned or on parole when he filed his pleading and accordingly was not "in custody" which was a necessary component of the Court's habeas subject matter jurisdiction. The Magistrate Judge furthermore observed that the Petition was time-barred under the one-year statute of limitations set out in the Antiterrorism and Effective Death Penalty Act, PUB. L.NO. 104-132, 110 STAT. 1214 (AEDPA). Mr. DeMann did not object to the Report and Recommendation, and an Article III judge subsequently adopted the Report and Recommendation and dismissed the habeas petition. *See DeMann v. Harvatich*, No. 1:11-cv-438, ECF No. 6 (W.D. Mich. July 18, 2011) (Quist, J.).

Unfortunately, Mr. DeMann's convictions for methamphetamine manufacturing operations do not appear to have been Mr. DeMann's last interaction with the criminal justice system. The instant Report and Recommendation details another arrest in 2016, where Mr. DeMann contends "all kinds of problems" ensued because "booking did not know I was hard of hearing." Case No. 1:26-cv-136, ECF No. 1, PageID.5. He blames the arresting officer for failing to inform the jail. And it further appears from Mr. DeMann's objections that other, more recent, incidents and/or arrests have occurred too, as recently as March 2026.[2] In fact, Mr. DeMann suggests that he may have intentionally tried to get arrested to get to the bottom of why, he says,

---

[2] Mr. DeMann filed his latest Complaint on January 13, 2026, and so whatever happened in March of 2026 is not a part of the nine pending cases at issue here. He mentions it for the first time in his objections.

the state courts have not afforded him with adequate accommodations for his hearing difficulties. *See, e.g.*, Case No. 1:26-cv-139, ECF No. 12, PageID.98.

But the crux of Mr. DeMann's claim is a general disagreement with the way his hearing impairment has been handled by the state courts.   He maintains there are ongoing violations of the ADA and Rehab Act relating to what he says are inadequate grievance procedures and insufficient grievance forms.   This basic contention—a failure to follow proper protocol and maintain proper grievance procedures—has spilled over into similar arguments made about the local government.

*PROCEDURAL HISTORY*

Mr. DeMann filed these nine federal lawsuits on January 13, 2026.   In each case he sought the ability to proceed *in forma pauperis* and for the appointment of counsel.   On March 19, 2026, the Magistrate Judge granted Mr. DeMann's motion to proceed *in forma pauperis*. Consequently, Mr. DeMann's nine complaints were subject to the screening mechanism at 28 U.S.C. § 1915(e)(2)(B).   Under that statutory provision, the court must dismiss any action brought *in forma pauperis* if the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.   On March 20, 2026, the Magistrate Judge issued a Report and Recommendation that determined none of Plaintiff's lawsuits survived screening under the standards of Section 1915(e)(2)(B).   In particular, the Magistrate Judge determined that the allegations across the nine lawsuits all fell outside the three-year statute of limitations; that even if the allegations were timely they were barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994); and that even beyond those two issues, the nine complaints were frivolous under 28 U.S.C. § 1915(e)(2)(B).

On April 30, 2026, Mr. DeMann filed a single Objection to the Magistrate Judge's Report and Recommendation.[3]

*ANALYSIS*

After its de novo review, the Court concludes that Mr. DeMann's nine complaints must be dismissed for the very reasons set out by the Magistrate Judge.    None of the arguments the Court is able to glean from Mr. DeMann's objections, and those contentions the Court gathers from his various other submissions, are persuasive.

Mr. DeMann disagrees with all three aspects of the Magistrate Judge's reasoning.    He contests the Magistrate Judge's recommendation that his claims are time-barred because he says he has identified continuing and ongoing violations of the ADA and Rehab Act.    He also opposes the Magistrate Judge's conclusion that his complaints are barred by *Heck* because, he says, immunity should not prevent him from proceeding with his claim.    Finally, Mr. DeMann claims that he has done enough to state a claim and that his lawsuits should survive screening under Section 1915(e)(2)(B).

---

[3] As the Magistrate Judge put it when describing Mr. DeMann's earlier submissions, Mr. DeMann's objections are "largely incoherent, and comprised of repetitive attachments that contain a patchwork of images, documents, and often incomprehensible monologues."    Accordingly, the objections offer little more than a generalized disagreement to the Magistrate Judge's recommended disposition, and largely appear to rehash the myriad grievances he has with the State system.    An objection which is not "clear enough to enable the district court to discern those issues that are dispositive and contentious," is insufficient to permit review of the magistrate's report. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).    Thus, a "general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed." *Id.* Mr. DeMann's objections likely do not meet the standard in *Miller* sufficient to permit meaningful review of the Magistrate Judge's Report and Recommendation. Mr. DeMann largely makes a general, albeit lengthy, objection to the Magistrate Judge's Report and Recommendation without citing to any case law to support his position or making any direct argument as to why the Magistrate Judge erred beyond rehashing his general protests. Nevertheless, the Court has reviewed Mr. DeMann's submissions de novo based on his objections.

In the Court's mind, the Magistrate Judge got it right on all three points. Mr. DeMann's complaints assert discrete acts that all fall outside any applicable statute of limitations. He has not alleged the type of continuing wrongful conduct necessarily to get past the time-bar. *See Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009); *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003). The *Heck* bar also applies to at least most of Mr. DeMann's claims. Immunity and the *Heck* bar are two separate things, and the Report and Recommendation made no mention of immunity. Here, many of Mr. DeMann's pleadings allude to the same arguments he raised in his habeas petition, like contentions regarding the out-of-court testimony, and whether his inculpatory statements to police should have been suppressed under a state statute. As a general matter this Court does not sit in an appellate role over the decisions of the state courts on how to apply their own state statutes. The Magistrate Judge correctly pointed out that *Heck* prevented Mr. DeMann from proceeding on these claims. *See Althouse v. U.S.,* 2022 WL 892696, at *3 (N.D. Tex. Mar. 4, 2022)*, Report & Recommendation adopted,* 2022 WL 891106 (N.D. Tex. Mar. 25, 2022) (collecting cases that have applied the *Heck* bar to claims arising under the ADA and Rehab Act that are used to attack the validity of a conviction or sentence).

The Court need not delve any deeper into this portion of the Report and Recommendation because the gravamen of Mr. DeMann's objections relate to the Magistrate Judge's determination that Mr. DeMann's lawsuits lack sufficient clarity and specificity to state a claim for purposes of screening under the standards of Section 1915. The Court again agrees with the Magistrate Judge's analysis and recommended disposition.

The Court does not doubt that Mr. DeMann sincerely believes the state system could better accommodate his difficulty hearing. Part of the issue appears to be one of Mr. DeMann's own choosing because he does not wish to use hearing aids. Regardless, Mr. DeMann's complaints

simply are insufficient to pass screening under Section 1915. The central problem for Mr. DeMann is that while he has submitted numerous pages expressing his disgust and disappointment (to put it mildly) with the state courts, he never squarely presents what the "problem" is that needs to be solved. Put differently, he asserts violations of the ADA and Rehab Act, but does not sufficiently allege how the defendants violated the statutes, at least in a way that passes muster under the Federal Rules of Civil Procedure. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mr. DeMann appears to recognize that his submissions are not a paradigm model of clarity, but he suggests that the Court is required to appoint him counsel, and that counsel will be able to clear up any deficiency or ambiguity.

The Court is not required to appoint Mr. DeMann counsel. Parties do not have an "automatic" constitutional right to counsel in a civil rights suit and, typically, counsel is only appointed in an exceptional case. *Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996) (observing that courts in the Sixth Circuit do not appoint counsel for indigent and pro se prisoners in civil rights cases absent truly extraordinary circumstances). "A district court has discretion to appoint counsel for an indigent civil litigant." *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993). In determining whether to appoint counsel, this Court should consider the type of case, the ability of the plaintiff to represent himself or herself, and the complexity of the legal and factual issues involved in the case. *Id*. at 606. The Court has carefully considered these factors and determines that Mr. DeMann has not presented extraordinary circumstances that warrant the appointment of counsel in this matter. *See Wesker v. Iron Workers Loc. 383,* No. 25-CV-796-JDP, 2026 WL 892463, at *3 (W.D. Wis. Apr. 1, 2026) (declining to appoint counsel and interpreter to deaf pro se litigant).

The ADA implementing regulation that Mr. DeMann identifies, 28 C.F.R. § 35.107, does not require a different outcome.    That section provides as follows:

> (a) Designation of responsible employee. A public entity that employs 50 or more persons shall designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities under this part, including any investigation of any complaint communicated to it alleging its noncompliance with this part or alleging any actions that would be prohibited by this part. The public entity shall make available to all interested individuals the name, office address, and telephone number of the employee or employees designated pursuant to this paragraph.
>
> (b) Complaint procedure. A public entity that employs 50 or more persons shall adopt and publish grievance procedures providing for prompt and equitable resolution of complaints alleging any action that would be prohibited by this part.

28 C.F.R. 35.107

Nothing within this implementing regulation relates in any way to appointment of counsel in a civil case, much less requires it.    Accordingly, Mr. DeMann's request for the appointment of counsel is denied.

Beyond using Section 35.107 as a claimed basis for the appointment of counsel, Mr. DeMann references it at several points across his various pleadings seemingly as evidence of the state courts' alleged substantive ADA and Rehab Act violations.    It appears that Mr. DeMann contends that throughout his various encounters with state law enforcement and the state courts, he has been harmed by those parties' asserted failure to maintain proper policies and procedures for disability accommodation under the regulation.    This is, however, not the same thing as alleging substantive violations under the ADA and Rehab Act.    And the "emerging consensus" is that there is no private cause of action to enforce Section 35.107.    *See Brown v. Dep't of Pub. Safety & Corr. Servs.*, 383 F. Supp. 3d 519, 556 (D. Md. 2019) (collecting cases).    To be sure, a panel of the Sixth Circuit has assumed for purposes of deciding the case before it that the ADA

10

provides for such a cause of action.   *Johnson v. Dobbins,* No. 22-5310, 2022 WL 16824202, at

*4 (6th Cir. Nov. 8, 2022).   The Court is not required to apply that assumption here.   And as

that case noted, the Sixth Circuit has also remarked in a published decision that regulations with

obligations that are not required by statute are generally not enforceable under the ADA.   *Id.*

(citing *Ability Ctr. Of Greater Toledo v. City of Sandusky*, 395 F.3d 901 (6th Cir. 2004)).

While it is doubtful, then, that Mr. DeMann has a private cause of action under the ADA

or the Rehab Act to enforce Section 35.107, the Court need not finally decide here whether it

agrees with what appears to be the majority view.   The panel in *Johnson* went on to conclude that

the plaintiff in that case had not demonstrated a violation of the regulation, even if the plaintiff had

a private cause of action to enforce it, and the same holds true here. Mr. DeMann clearly disagrees

with the grievance procedures and grievance forms maintained by the state courts.   But beyond

complaining of procedures not to his personal liking, he fails to allege how the state courts violated

the regulation in any way—at least in a manner that the Court can comprehend and that is

consistent with Rule 8's requirement of a short and plain statement of the claim showing that the

pleader is entitled to relief.   Other than rearguing his state criminal case, it appears to the Court

Mr. DeMann simply disagrees with how the state courts resolved his grievances without

identifying any statutory or regulatory violation.   This is not enough to survive screening under

Section 1915.   *See Schultz v. City of Wyoming*, No. 1:15-cv-940, ECF No. 38, PageID.150 (W.D.

Mich. Dec. 30, 2016) (Bell, J.) (noting the regulatory requirements of Section 35.107 are not found

in the ADA, and screening the pro se plaintiff's claim under the regulation where the plaintiff had

"not identified any actual injury he allegedly suffered as a result of the city's failure [to follow the

regulation] much less does he demonstrate a causal connection between the purported injury and

the failure to [comply with the regulation].").

11

## CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge is **APPROVED AND ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that Plaintiff's requests for the appointment of counsel are **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Complaints are **DISMISSED** for failure to state a claim under 28 U.S.C. § 1915(e)(2).

**IT IS FURTHER ORDERED** that should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee in each case under § 1915(b)(1); *see McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997).

Dated:    May 7, 2026            /s/ Robert J. Jonker
                                 ROBERT J. JONKER
                                 UNITED STATES DISTRICT JUDGE

12